UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRONTIER CREDIT UNION, formerly East Idaho Credit Union, an Idaho state-chartered credit union,<br><br>      Plaintiff,<br><br>      v.<br><br>ADAM C. SERR, SR., an individual; SHAYLA LYNN KELLEY, aka Shayla Lynn Hawkins, an individual; KRISTIN L. BERGESON, an individual; BRIGHT STAR FINANCIAL ADVISORS, LLC, an Idaho limited liability company; AMERIPRISE FINANCIAL SERVICES, LLC, a Delaware limited liability company; DOE BUSINESS ENTITIES 1-10, unknown business entities; and JOHN/JANE DOES 11-20, unknown individuals,<br><br>      Defendants. | Case No. 4:23-cv-00433-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are the Defendants' motions to stay the proceedings in this case and to compel Plaintiff Frontier Credit Union, formerly known as East Idaho Credit Union (Frontier), to arbitrate its claims against them. (Case No. 4:23-cv-00433, Dkt. 7-1; Case No. 4:23-cv-00434-AKB, Dkt. 7-1[1]). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing.

---

[1] Frontier filed two identical actions in federal court—one against Ameriprise Financial Services, LLC (Case No. 4:23-cv-00434-AKB) and another against the other Defendants (Case No. 4:23-cv-00433-AKB). The Court consolidated Frontier's actions. (Case No. 4:23-cv-00433, Dkt. 10; Case No. 4:23-cv-00434-AKB, Dkt. 11). The citations in this order are to the docket entries in the lead case, Case No. 4:23-cv-00433-AKB, unless otherwise indicated.

**MEMORANDUM DECISION AND ORDER - 1**

Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons explained below, the Court grants Defendant Ameriprise Financial Service, LLC's alternative motion to dismiss; grants in part and denies in part the other Defendants' motion to compel Frontier to arbitrate its claims; and stays the case pending arbitration.

## BACKGROUND

Frontier is a state-chartered credit union headquartered in Idaho Falls. In 2007, Frontier entered into a Financial Institution Services Agreement (2007 Agreement) with Linsco/Private Ledger Corporation (LPL), a licensed broker-dealer registered with the Financial Industry Regulatory Authority (FINRA). (Dkt. 1-1 at p. 57). The purpose of the 2007 Agreement was to allow Frontier to provide FINRA-related products and services to Frontier's customers. Under this 2007 Agreement, Frontier selected one of its employees, Defendant Adam Serr, to serve as the Registered Representative under the 2007 Agreement.

Serr is a licensed Series 7 advisor. (Dkt. 14 at p. 3). In October 2007, he entered into an FIS Representative Agreement with LPL as LPL's limited agent to solicit through LPL the purchases of securities, investments, products, services, and insurance from Frontier's customers. (Dkt. 1-1 at p. 78). In late 2016 or early 2017, Frontier promoted Serr to vice president of its wealth management department. (*Id.* at ¶ 47). Also in 2016, another Frontier employee who is a Series 7 advisor, Defendant Shayla Kelley, entered into an FIS Representative Agreement with LPL. (*Id.* at p. 133). Subsequently, in 2022, Frontier entered into an amended and restated agreement (2022 Agreement) with LPL.[2] (*Id.* at p. 100).

---

[2] According to the 2022 Agreement, a financial services group, which was a party to the 2007 Agreement, dissolved; LPL succeeded that group's obligations under the 2007 Agreement; and "the parties desire[d] to amend and restate the [2007 Agreement] in its entirety." (Dkt. 1-1 at p. 100). Further, the 2022 Agreement provides that it "constitutes the entire agreement and

**MEMORANDUM DECISION AND ORDER - 2**

According to Frontier, under its contractual arrangement with LPL, Frontier's wealth management department had approximately $209,000,000 in assets under management on July 31, 2022. (*Id.* at ¶ 44). Thereafter, on August 25, 2022, Serr, Kelley, and another Frontier employee, Kristin Bergeson, resigned from their employment with Frontier to work for a newly created entity, Defendant Bright Star Financial Advisors, LLC. (*Id.* at ¶¶ 109, 131). Bright Star allegedly has a contractual arrangement with Defendant Ameriprise Financial Services, LLC, to provide FINRA-related products to Bright Star's customers. (Case No. 4:23-cv-00434-AKB, Dkt. 7-1). Frontier alleges that after Serr, Kelley, and Bergeson resigned from their employment with Frontier, they "aggressively solicited [Frontier's] customers and employees" for the benefit of Bright Star and Ameriprise. (Dkt. 1-1 at ¶ 3; *id.* at p. 28, § 3). As a result, Frontier contends its assets under management plummeted. (*Id.* at ¶¶ 150, 167-171).

More than a year after the resignation of Serr, Kelley, and Bergeson, Frontier filed this consolidated action in October 2023. In Frontier's complaint (in the section entitled "general allegations"), Frontier alleges the LPL agreements—the 2007 and 2022 Agreements and the two Representative Agreements—govern certain aspects of Frontier's employment relationships with Serr and Kelley. Frontier both quotes the LPL agreements at length and attaches them to its complaint. (*See* Dkt. 1-1 at Exs. A, B, G, H). Frontier alleges the LPL agreements govern Serr's and Kelley's obligations to it despite that Serr and Kelley are not signatories to the 2007 and 2022 Agreements (between LPL and Frontier), and Frontier is not a party to Serr's Representative Agreements (between LPL and the Registered Representative).

---

understanding between the parties . . . and supersedes any and all prior . . . agreements." (*Id.* at 117, ¶ 16). Despite this superseding provision, Frontier relies in part on the 2007 Agreement in its complaint, and Defendants rely on it in part in their motions to compel arbitration. Because the 2022 Agreement appears to supersede the 2007 Agreement, however, the Court's analysis focuses on the 2022 Agreement.

**MEMORANDUM DECISION AND ORDER - 3**

Regarding Serr's obligations under the LPL agreements, Frontier alleges that: (1) the 2007 and 2022 Agreements and Serr's Representative Agreement "governed Serr's responsibilities as [Frontier's] Registered Representative with LPL"; (2) a material condition of the 2007 Agreement was that "Serr agreed to heightened contractual duties to [Frontier]" and "agreed that 'all customer account information' is 'confidential and proprietary' and belongs to [Frontier]"; (3) a material condition of the 2022 Agreement was that "Serr agreed that [Frontier] owned the LPL Accounts and that he would not take, disclose, or use [Frontier's] Confidential Information upon resigning"; and (4) a material condition of Serr's Representative Agreement was that Serr "expressly agreed" not to solicit Frontier's customers or employees. (*Id.* at ¶¶ 61, 64-66, 68-69).

Similarly, regarding Kelley's obligations under the LPL agreements, Frontier alleges that: (1) like Serr, Kelley agreed to the "heightened contractual duties to [Frontier]" under the 2007 and 2022 Agreements and Kelley's Representative Agreement; (2) under that Representative Agreement, Kelley agreed to be bound by the 2007 and 2022 Agreements; (3) a material condition of the Representative Agreement and the 2007 Agreement was that "Kelley agreed that 'all customer account information' is 'confidential and proprietary' and belongs to [Frontier]"; and (4) under the Representative Agreement, "Kelley agreed to preserve [Frontier's] Confidential Information and not to disclose or use [that] Information." (*Id.* at ¶¶ 77-81).

Based on these and other allegations, Frontier alleges thirteen claims for relief, which include: (1) breach of fiduciary duties and constructive fraud against Serr only; (2) fraud by affirmative misrepresentation, fraud by nondisclosure, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief against Serr, Kelley, and Bergeson; and (3) misappropriation of trade secrets under Idaho Code § 48-801 and 18 U.S.C. § 1836, tortious interference with contract and with prospective economic advantage, unjust enrichment, and

conversion against all Defendants, including Bright Star and Ameriprise. In response, Defendants Serr, Kelley, Bergeson, and Bright Star move to stay the proceedings and to compel Frontier to arbitrate under the LPL agreements—all of which contain arbitration clauses.[3] Ameriprise, who was originally sued in a separate action, likewise moves to compel arbitration under the LPL agreements and to stay the proceedings in this case. Alternatively, Ameriprise moves to dismiss the claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

### A.     Rule 12(b)(6)

A dismissal under Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim, showing the pleader is entitled to relief and giving the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a claim requires a complaint with enough factual basis which, if taken as true, states a plausible claim for relief. *Twombly*, 550 U.S. at 556. A claim has

---

[3] The 2022 Agreement arbitration clause provides in relevant part that "any disputes under this Agreement, including the interpretation of its terms and conditions and any rights and obligations of the parties hereunder shall be arbitrated at a proceeding held under the auspices and in accordance with the rules, regulations and procedures of FINRA . . . ." (Dkt. 1-1 at p. 118, ¶ 18.e). The arbitration clauses in the Representative Agreements are substantially similar for purposes of determining whether Defendants can invoke arbitration and provide that "Representative and LPL expressly agree to submit any and all disputes, claims or controversies relating to Representative's association with or termination from LPL to final and binding arbitration. . . . ." (*Id.* at pp. 82, 137).

facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

**B.     Arbitration**

For purposes of resolving Defendants' motions to compel arbitration, the Court assumes the truth of the complaint's allegations. *Herrera v. Cathay Pacific Airways Ltd.*, 94 F.4th 1083, 1085 (9th Cir. 2024). The Federal Arbitration Act (FAA) generally provides any arbitration agreement within the FAA's scope shall be valid, irrevocable, and enforceable. 9 U.S.C. § 2. A party "aggrieved by [the] refusal of another to arbitrate" may petition the court for an order compelling arbitration. 9 U.S.C. § 4. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

The court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719-20 (9th Cir. 1999). Further, § 3 of the FAA provides that, if a court determines an issue or issues are subject to arbitration, the court "shall" stay the trial of the action pending arbitration. 9 U.S.C. § 3. Under the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the

underlying dispute but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

Generally, a litigant cannot compel a party who has not assented to an arbitration agreement to arbitrate under that agreement. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021). The United States Supreme Court has held, however, that "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Likewise, a litigant who is a signatory to an arbitration agreement may invoke arbitration against a nonsignatory under certain circumstances. *See, e.g., Franklin*, 998 F.3d at 871 (addressing whether signatory's claim against nonsignatory was arbitrable); *Stafford v. Rite Aid Corp*, 998 F.3d 862, 865 n.2 (9th Cir. 2021) (noting equitable estoppel applies to bind both signatories and nonsignatories). The liberal federal policy favoring arbitration agreements is inapposite in determining whether a particular party is bound by the arbitration agreement. *Waymo, LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 937 (N.D. Cal. 2017).

## ANALYSIS

A.   **Ameriprise's Motion to Dismiss**

Frontier alleges six claims for relief against Ameriprise, including misappropriation of trade secrets under state and federal law (Counts Five and Six), tortious interference with contract (Count Seven), tortious interference with prospective economic advantage (Count Eight), unjust enrichment (Count Eleven), and conversion (Count Twelve). Despite filing a separate complaint against Ameriprise, which is over 50 pages in length and over 300 separate allegations (*see* Case

**MEMORANDUM DECISION AND ORDER - 7**

No. 4:23-cv-00434-AKB, Dkt. 1-4), Frontier asserts less than ten specific allegations against Ameriprise (excluding those allegations simply identifying Ameriprise as a defendant).

All these specific allegations, with one exception, relate to other Defendants' conduct. For example, Frontier alleges Serr failed to disclose to Frontier his "opportunity" and "negotiations" with Ameriprise; "Defendants" entered into a "contractual arrangement" with Ameriprise; "Defendants . . . transferred member information and accounts to . . . Ameriprise"; Serr breached his fiduciary duties to Frontier by negotiating the 2022 Agreement between Frontier and LPL while negotiating with Ameriprise; and Frontier is entitled to an accounting from Serr and Bright Star for revenue received from Serr's "new arrangement with Ameriprise." (Dkt. 1-1 at ¶¶ 110, 125-27, 147, 185, 191, 224). None of these allegations assert any wrongful conduct by Ameriprise.

Rather, only one single allegation avers a wrongful act against Ameriprise. Under Frontier's claim for tortious interference with contract (Count Seven), Frontier alleges Ameriprise "intentionally interfered with [Frontier's] contracts with LPL, Serr, Kelley and Bergeson, inducing Serr, Kelley and Bergeson to breach their agreements." (*Id.* at ¶ 270). This sole, conclusory allegation, however, is insufficient to assert any claim against Ameriprise, even for tortious interference. As noted above, "a formulaic recitation of the elements of a cause of action" is not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555. Frontier's allegations against Ameriprise suggest only a possibility Ameriprise acted wrongfully and are inadequate to state any claim against it, including a claim for tortious interference or otherwise. Accordingly, the Court grants Ameriprise's motion to dismiss and, thus, does not address Frontier's obligation to arbitrate any claim against Ameriprise.

B.     Arbitration

Many of Frontier's allegations lump the LPL agreements together for purposes of asserting its claims and analyzing whether arbitration is required. Similarly, Defendants in many instances rely on the agreements collectively without clearly analyzing the claims at issue and each Defendant's right to arbitration. Resolving whether a particular Defendant is entitled to compel Frontier to arbitrate under the LPL agreements, however, requires a more precise analysis of the agreement at issue, the applicable law governing that agreement, the alleged wrongdoer's status as a signatory or a nonsignatory, and the claim at issue. Taking these factors into consideration, the Court concludes that Frontier must arbitrate certain but not of all its claims against Serr and Kelley and that Frontier is not required to arbitrate its claims against Bergeson or Bright Star.

1.     2022 Agreement - California law

Defendants are all nonsignatories to the 2022 Agreement between Frontier and LPL. To determine whether Defendants may invoke arbitration under the 2022 Agreement, California law governs. (Dkt. 1-1 at p. 118) ("This Agreement shall be construed according to the laws of the State of California."). *See Kramer*, 705 F.3d at 1128 (ruling litigant may invoke arbitration if relevant law allows). At issue then is whether nonsignatories may enforce an arbitration clause against a signatory under California law.

As the Ninth Circuit has noted, a nonsignatory to an arbitration agreement may invoke arbitration under the doctrine of equitable estoppel under California law. *Franklin*, 998 F.3d at 870 (citing *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 1 Cal. Rptr. 3d 328, 334 (Ct. App. 2003)). The purpose of the doctrine is to prevent a party from using a contract containing an arbitration clause and then attempting to avoid the duty to arbitrate. *Id.* at 871. "[T]o compel arbitration of a plaintiff's claims against a nonsignatory. . . the court must decide both that (1) the

plaintiff is equitably estopped from escaping the contract, and (2) the claims fall within the scope of the contract's arbitration clause." *Id.* at 872.

In determining whether a plaintiff should be estopped from avoiding arbitration, the Court considers "'the relationships of the persons, wrongs and issues' and in particular, whether the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 871 (citing *Metalclad*, 1 Cal. Rptr. 3d at 334); *see also Herrera v. Cathay Pac. Airways Ltd.*, 94 F.4th 1083, 1087-88 (9th Cir. 2024) ("Under California law, a nonsignatory to a contract may enforce an arbitration provision under the doctrine of equitable estoppel when the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract." (cleaned-up)); *but cf. Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865-66 (9th Cir. 2021) (noting if plaintiff's claims merely reference agreement with arbitration clause, equitable estoppel will not warrant compelling arbitration).

Like California, the Ninth Circuit has also "recognized that equitable estoppel applies when the plaintiff's claims rely on the written agreement, for instance when the claims are 'intimately founded in and intertwined with the underlying contract obligations,'" including when a nonsignatory defendant attempts to invoke equitable estoppel against a signatory plaintiff. *Id.* at 873. Where a claim rests on a common law or statutory duty, however, the principles of equitable estoppel do not require the claim to be arbitrated. *Id.* at 866-67.

Here, some of Frontier's claims undisputedly rely on the 2022 Agreement's terms and conditions and the rights and obligations to which the arbitration clause applies. (*See* Dkt. 1-1 at p. 118, ¶ 18.e) (containing arbitration clause). For example, Frontier alleges that the 2022 Agreement governs Serr's "responsibilities"; Kelley agreed to be bound by the 2022 Agreement; Serr and Kelley agreed to "heightened contractual duties" under the 2022 Agreement. (*Id.* at ¶¶ 61,

**MEMORANDUM DECISION AND ORDER - 10**

64-66, 68-69, 77-81). Further, Frontier alleges that, under the 2022 Agreement, Serr and Kelley agreed Frontier owned all customer account information; they agreed to not use or disclose this confidential and propriety information; and they agreed to not solicit Frontier's customers or employees. (*Id.*)

Based on these allegations, the Court concludes Frontier's claims as against Serr and Kelley for breach of contract (Count Nine) and breach of the implied covenant of good faith and fair dealing (Count Ten) are "intimately founded in and intertwined with" the 2022 Agreement's contractual provisions. *Franklin*, 998 F.3d at 871 (quotation omitted). Indeed, these claims appear to be directly premised on the 2022 Agreement. Frontier's claim for declaratory relief (Count Thirteen) as against Serr and Kelley is also premised on the 2022 Agreement. Under that claim, Frontier requests the Court declare Frontier's "relationship" with Defendants "show[s] [Frontier] and its book of business are not subject to the Protocol." (Dkt. 1-1 at p. 50).

This "Protocol" is referred to in the 2022 Agreement. (*Id.* at p. 115, ¶ e). The Agreement provides that "the Protocol for Broker Recruiting . . . allows certain Customer information to be taken by Registered Representatives to approach such Customers after they leave LPL and join another Protocol firm" but that "the Program is not intended to be part of the Protocol and that Registered Representatives are required to sign a Representative agreement, which prohibits [them] from taking, disclosing, or using any FI Confidential Information upon their termination of resignation from LPL." (*Id.*). In other words, Frontier's declaratory claim appears to request the Court interpret and declare the meaning of the terms of the 2022 Agreement regarding the Protocol. This request implicates the Agreement's arbitration clause, which provides "any disputes under this Agreement, including the *interpretation* of its terms and conditions" shall be arbitrated. (Dkt. 1-1 at p. 118, ¶ 18.e) (emphasis added). Accordingly, Frontier's Counts Nine, Ten, and

MEMORANDUM DECISION AND ORDER - 11

Thirteen—as against Serr and Kelly—are at least intertwined with, if not based on, the 2022 Agreement, and Frontier is required to arbitrate those claims.

Frontier's remaining claims, however, are neither based on nor intertwined with the 2022 Agreement, and Frontier is not required to arbitrate them. Although Frontier alleges Serr and Kelley have obligations to it under the 2022 Agreement, it does not allege Bergeson's employment relationship is governed by or subject to the 2022 Agreement. (*See id.* at ¶¶ 82-87) (alleging Bergeson's employment with Frontier). Rather, Bergeson's obligations to Frontier are based only on common-law employment principles. For this reason, Frontier does not need to arbitrate its claims related to breach of contract (Counts Nine and Ten) or its claim for declaratory relief (Count Thirteen) against Bergeson.

Likewise, Frontier is not required to arbitrate its remaining claims. Frontier's breach of fiduciary duty claim (Count Thirteen) against Serr is based on his status as an "official" with fiduciary duties to Frontier under common law and Idaho Code § 26-2114B, not the 2022 Agreement. (*Id.* at ¶¶ 174-194). Frontier's constructive fraud claim (Count Four) is based in part on Serr's status as a fiduciary and his 2022 Annual Acknowledgement, which Frontier required him to submit as an employee and which is unrelated to the 2022 Agreement. Frontier's claims for fraud by misrepresentation (Count Two) and for fraud by nondisclosure (Count Three) against Serr, Kelley, and Bergeson are also premised their 2022 Annual Acknowledgements, not the 2022 Agreement.

Frontier's claims for violation of the Idaho and federal trade secret acts (Counts Five and Six) are not dependent on or otherwise intertwined with the 2022 Agreement. Although Defendants may have received protectable information because of their employment relationships with Frontier, the trade secret acts govern statutory obligations regarding Frontier's alleged trade

**MEMORANDUM DECISION AND ORDER - 12**

secrets. Frontier's tortious interference with contract and with prosecutive economic advantage claims (Counts Seven and Eight) are governed by a common-law duty. Finally, Frontier's unjust enrichment claim (Count Eleven) is based on equitable principles, and its conversion claim (Count Twelve) is governed by common law and not intertwined with the 2022 Agreement. *See Barry v. Pacific West Const., Inc.*, 103 P.3d 440, 447 (Idaho 2004) (noting unjust enrichment is measure of recovery under implied contract); *Erickson v. Flynn*, 64 P.3d 959, 964 (Idaho Ct. App. 2002) (providing unjust enrichment theory allows recovery where defendant has received benefit and it would be inequitable to allow him to retain the benefit without compensating plaintiff); *Carpenter v. Turrell*, 227 P.3d 575, 580 (Idaho 2010) (explaining conversion is tort defined as distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with that person's rights to property).

In summary, Frontier's claims against Serr and Kelley for breach of contract (Count Nine), breach of the implied covenant of good faith and fair dealing (Count Ten), and for declaratory relief (Count Thirteen) are intertwined with, if not dependent on, the 2022 Agreement, and Frontier must arbitrate those claims against Serr and Kelley. To the extent Bergeson owes Frontier any contractual obligations, however, they are independent of and unrelated to the 2022 Agreement. Likewise, Frontier's remaining claims do not rely on the 2022 Agreement but, rather, are based on either statutory duties, common law duties, or both. Equitable estoppel does not require Frontier to arbitrate those claims.

  **2.**  **Representative Agreements - Massachusetts law**

The Representative Agreements provide an independent basis for Serr and Kelley to compel Frontier to arbitrate its claims for breach of contract (Count Nine) and breach of the implied covenant of good faith and fair dealing (Count Ten). Serr and Kelley are the only parties to this

action who are signatories to the Representative Agreements. At issue is whether signatories to an arbitration agreement may enforce that agreement against a nonsignatory, like Frontier, under Massachusetts law, which governs the Representative Agreements. Massachusetts, like California, recognizes the doctrine of equitable estoppel to enforce an arbitration agreement, including to determine whether a signatory to the agreements can force arbitration against a nonsignatory. *Landry v. Transworld Sys., Inc.*, 149 N.E.3d 781, 786 (Mass. 2020).

The Massachusetts Supreme Judicial Court has ruled that "if a party's claims are so intimately founded in and closely related to an agreement which also mandates arbitration, the party opposing arbitration is equitably estopped from denying the arbitrability of its claims." *Machado v. System4, LLC*, 28 N.E.3d 401, 409 (Mass. 2015). Further, it has noted that a plaintiff's "actual dependence" on an agreement containing an arbitration clause is "always sine qua non of an appropriate situation for applying equitable estoppel." *Id.* (quotation omitted); *see also Cavallaro v. Wilmer Cutler Pickering Hale & Dorr LLP*, 1484CV03598BLS1, 2020 WL 2193633, at *4 (Mass. Sup. Ct. Feb. 3, 2020) (ruling nonsignatory equitably estopped from denying application of arbitration clause because they brought suit under agreement containing clause and knowingly accepted benefits flowing from agreement).

Here, Frontier relies directly on Serr's Representative Agreement to allege Serr agreed not to solicit, directly or indirectly, any of Frontier's customers or employees for a period of one year. (Dkt. 1-1 at ¶ 70). Similarly, Frontier relies on Kelley's Representative Agreement and quotes it at length including, for example, that Kelley agreed not to solicit, directly or indirectly, any of Frontier's customers or employees for a period of one year. (*Id.* at ¶ 80). As the Massachusetts Supreme Court ruled, under the doctrine of equitable estoppel, Frontier's actual dependence on the Representatives Agreements in alleging its breach of contract-related claims against Serr and

Kelley (Counts Nine and Ten) requires it to comply with the arbitration clauses in those agreements.

### 3. Stay of Remaining Claims

The Court has discretion to stay any claims not subject to arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23 (stating court has discretion to stay litigation among nonarbitrating parties pending arbitration); *see also U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (ruling economy and efficiency support determination that nonarbitrable claim must wait arbitration's final determination). The Court finds a stay of the nonarbitrable claims in this case would best serve judicial economy and efficiency. Allowing this case and the arbitration to proceed at the same time would risk inconsistent results and would needlessly duplicate the proceedings. Accordingly, the case is stayed in its entirety pending arbitration.

## ORDER

**IT IS ORDERED that:**

1. The Motion to Stay the Proceedings and Compel Arbitration of Defendants Serr, Kelley, Bergeson, and Bright Star (Case No. 4:23-cv-00433-AKB, Dkt. 7) is **GRANTED** in part and **DENIED** in part. Frontier must arbitrate Counts Nine, Ten, and Thirteen as alleged against Serr and Kelley.

2. The Motion to Stay the Proceedings and Compel Arbitration or, Alternatively, to Dismiss by Defendant Ameriprise (Case No. 4:23-cv-00434-AKB, Dkt. 7) is **GRANTED** Frontier's claims against Ameriprise are dismissed with prejudice for failure to state a claim.

3. The proceedings in this case are **STAYED** pending arbitration.

DATED: May 24, 2024

Amanda K. Brailsford
U.S. District Court Judge